**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE TAL EDUCATION GROUP SECURITIES LITIGATION |

Case No. 1:18-CV-05480-LAP-KHP

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     INTRODUCTION ................................................................................................... 1

III.    ARGUMENT ........................................................................................................... 4

        A.      Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund............................................................................................ 4

        B.      The Court Should Award a Reasonable Percentage of the Common Fund ........... 5

        C.      The Requested Attorneys' Fees Are Reasonable ..................................................... 6

                1.      The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method ........................................................................................... 6

                2.      The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee .............................................................................................. 9

        D.      Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable ........................................................................................ 11

                1.      Time and Labor Expended Support the Requested Fee ............................ 11

                2.      The Risks of Litigation Support the Requested Fee ................................. 13

                3.      The Magnitude and Complexity of the Action Support the Fee .............. 20

                4.      The Quality of Representation Supports the Requested Fee ................... 21

                5.      The Requested Fee in Relation to the Settlement Amount ...................... 22

                6.      Public Policy Considerations Support the Requested Fee ....................... 22

        E.      Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ................................................................................ 23

        F.      Plaintiffs Should be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4) .................................................................................................... 24

IV.     CONCLUSION...................................................................................................... 25

## TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ................................................................. 2

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ............................................................. 19

*Anwar v. Fairfield Greenwich Ltd.*,
    2012 WL 1981505 (S.D.N.Y. June 1, 2012) ......................................... 7

*Asare v. Change Group of New York, Inc.*,
    2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ..................................... 10

*Athale v. Sinotech Energy Ltd.*,
    2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ................................. 5, 10

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
    2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ........................................ 4

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ......................................... 6

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................. 4

*Burns v. Falconstor Software, Inc.*,
    2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ................................... 10

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ..................................................... 18

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................. 8, 15, 21

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................... 13

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................. 21, 23

*Cornwell v. Credit Suisse Grp.*,
    2011 WL 13263367 (S.D.N.Y. July 18, 2011) ..................................... 10

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................................................. 6, 10

*Dura Pharms., Inc., v. Broudo*,
    544 U.S. 336 (2005) ......................................................................................... 17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ............................................................................ 19

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ........................................................................ *passim*

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002) ................................................................... 2, 14

*Gross v. GFI Group, Inc.*,
    784 Fed. App'x. 27 (2d Cir. Sept. 13 2019) ..................................................... 14

*Guevoura Fund Ltd. v. Sillerman*,
    2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................... 10

*Hayes v. Harmony Gold Mining Co.*,
    2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ....................................................... 7

*Hicks v. Morgan Stanley, & Co.*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................................. 4, 6, 23

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
    2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ................................................... 22

*In re Advanced Battery Technologies, Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. Mar. 24, 2014) ........................................................ 17

*In re Akazoo S.A. Sec. Litig.*,
    2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) .................................................... 8

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................................................ 20

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
    772 F.3d 125 (2d Cir. 2014) ............................................................................. 25

*In re BankAtlantic Bancorp, Inc.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .................................................... 19

*In re Bisys Sec. Litig.*,
   2007 WL 2049726 (S.D.N.Y July 16, 2007) ........................................................................ 10

*In re Bristol-Myers Squibb Sec. Litig.*,
   361 F. Supp. 2d 229 (S.D.N.Y. 2005) ............................................................................... 6

*In re China Media Express Holdings, Inc. S'holder Litig.*,
   2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) .................................................................. 7

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................................... 17, 23

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ................................................................................ 10

*In re Comverse Tech., Inc. Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................................ 9, 13, 22

*In re Deutsche Telekom AG Sec. Litig.*,
   2005 WL 7984326 (S.D.N.Y. June 14, 2005) .................................................................. 10

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005) .............................................................................. 10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................................................... 5

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .................................................................... 13

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) .............................................................................. 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ...................................................................................... 17, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......... 13, 14, 23, 24

*In re Giant Interactive Group, Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. Nov. 2, 2011) .............................................................. 14, 17, 19

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................. *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................................... 9, 10

*In re Idreamsky Technology Limited Sec. Litig.*,
    2018 WL 8950640 (S.D.N.Y. April 6, 2018) ......................................................... 8

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) .......................................................................... 20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003) ................................................................. 24

*In re Interpublic Sec. Litig.*,
    2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...................................................... 10

*In re Lloyd's Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..................................................... 6

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................. 18, 25

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................ 20

*In re Qudian Inc. Sec. Litig.*,
    2021 WL 2328437 (S.D.N.Y. June 8, 2021) .................................................... 8, 25

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ................................................................................. 6

*In re Signet Jewelers Limited Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..................................................... 25

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. Sept. 10, 2008) ................................................... 3

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...................................... 4, 21, 22, 25

*In re Warner Commcn's Sec. Litig.*,
    618 F. Supp. 738 (S.D.N.Y. 1985) ..................................................................... 18

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................. 5

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.,*
  364 F. Supp. 2d 980 (D. Minn. 2005)..............................................................2, 16

*Johnson v. Brennan,*
  2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)............................................................6

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.,*
  2009 WL 4730185 (D.N.J. Dec. 4, 2009)..............................................................20

*Lea v. TAL Education Group,*
  2019 WL 4688691 (S.D.N.Y. Sept. 25, 2019)....................................................2, 14, 16

*Lea v. TAL Education Group,*
  837 Fed. Appx. 20 92d Cir. 2020) ..............................................................15, 16

*LeBlanc-Sternberg v. Fletcher,*
  143 F.3d 748 (2d Cir. 1998)..............................................................9

*Maley v. Del Global Techs. Corp.,*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................*passim*

*Mills v. Elec. Auto-Lite Co.,*
  396 U.S. 375 (1970)..............................................................4

*Missouri v. Jenkins,*
  491 U.S. 274 (1989)..............................................................9

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
  2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ..............................................................7

*Monzon v. 103W77 Partners, LLC,*
  2015 WL 993038 (S.D.N.Y. 2015)..............................................................5

*Robbins v. Koger Props., Inc.,*
  116 F.3d 1441 (11th Cir. 1997) ..............................................................19

*Savoie v. Merchs. Banks,*
  166 F.3d 456 (2d Cir. 1999)..............................................................9

*Schwartz v. TXU Corp.,*
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)..............................................................16

*Shapiro v. JPMorgan Chase & Co.,*
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..............................................................13

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ................................................................. 14

*Silverman v. Motorola, Inc.*,
   2012 WL 1597388 (N.D. Ill.  May 7, 2012) ........................................... 23

*Taft v. Ackermans*,
   2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ........................................... 20

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ......................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................... 23

*Too v. Rockwell Medical, Inc.*,
   2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020) ........................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................ 5, 6, 10

*Wilson v. LSB Indus., Inc.*,
   2019 WL 3542844 (S.D.N.Y. June 28, 2019) ........................................... 7

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ......................................... 10

*Zeltser v. Merrill Lynch & Co., Inc.*,
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ........................................... 8

## STATUTES

15 U.S.C. § 78u-4 ...................................................................................... 2

15 U.S.C. § 78u-4(a)(4) ................................................................... 1, 24, 25

15 U.S.C. § 78u-4(a)(6) ............................................................................. 5

## I.    **PRELIMINARY STATEMENT**

Court-appointed Lead Counsel, Glancy Prongay & Murray LLP ("GPM"), on behalf of all Plaintiffs' Counsel, respectfully submits this memorandum of law in support of its request for attorneys' fees of 33⅓% of the Settlement Fund[1] (or $2,500,000, plus interest at the same rate as the Settlement Fund).[2]    Lead Counsel also seeks reimbursement of $159,013.14 in out-of-pocket expenses advanced by counsel, as well as $7,500 for each Lead Plaintiff, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(4).

## II.    **INTRODUCTION**[3]

The proposed Settlement, which provides for a non-reversionary cash payment of $7,500,000 in exchange for the resolution of the Action, is an excellent result for the Settlement Class.  In fact, the recovery is one of the largest ever against a Chinese company in a securities class action.  *See* Ex. 9 (collecting cases).  This result is even more outstanding when juxtaposed against the significant hurdles that Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation.  In undertaking this litigation, Plaintiffs' Counsel faced numerous challenges to establishing liability and damages.  The risk of losing was very real, and it was greatly

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated June 24, 2021 (Dkt. No. 74-1), or in the concurrently-filed Declaration of Kara M. Wolke in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Wolke Decl."). Citations to "¶__" or "Ex. __" in this memorandum refer to paragraphs in, or exhibits to, the Wolke Declaration. Unless otherwise indicated, all emphasis is added and all internal quotation marks and citations are omitted.

[2] The Notice informed the Settlement Class that Lead Counsel would apply for an attorneys' fee award of up to 33⅓% of the Settlement Fund (which includes accrued interest).

[3] The Wolke Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the Action's history (¶¶17-47); nature of the claims asserted (¶17); negotiations leading to the Settlement (¶¶42-46); risks and uncertainties of continued litigation (¶¶49-66); a summary of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class (¶¶12-13); and additional information on the factors that support the fee and expense application, including the lodestar cross-check (¶¶89-92).

enhanced by the fact that Plaintiffs' Counsel would be litigating against highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").  Indeed, the Court need look no further than its own order dismissing the case to assess the riskiness of the litigation.  *See Lea v. TAL Education Group*, 2019 WL 4688691, at *1, 7 (S.D.N.Y. Sept. 25, 2019).

The riskiness and expense of this complex action was further elevated because Defendant TAL Education Group ("TAL" or the "Company") is based in Beijing, China.  Plaintiffs' Counsel's investigation and prosecution of the case required the use of private investigators in Asia, translators, and a thorough understanding of a variety of business and legal issues unique to China.  Plaintiffs' Counsel also knew that even if Plaintiffs were to prevail at trial, it would be nearly impossible to execute on a judgment in China.  There was, therefore, an extremely strong possibility that the case would yield little or no recovery after many years of costly litigation.  *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").  Despite these risks, Plaintiffs' Counsel worked 2,836.90 hours, and advanced $159,013.14 in expenses, all on a fully continent basis.

As compensation for their significant efforts and achievements on behalf of the Settlement

Class, Lead Counsel respectfully request a fee award in the amount of 33⅓% of the Settlement Fund. The requested fee is consistent with attorney fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Plaintiffs' Counsel's lodestar. Indeed, the requested fee represents a multiplier of 1.3 on Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with substantial contingency risks such as this one. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. Sept. 10, 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

Lead Counsel also seek reimbursement of $159,013.14 in out-of-pocket litigation expenses incurred by Plaintiffs' Counsel in prosecuting this Action. *See* ¶¶111-117. This amount is below the $230,000 limit on Litigation Expenses disclosed in the Notice—which, by definition, included PSLRA awards to Plaintiffs. The expenses are reasonable in amount, and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Court-appointed Lead Plaintiffs Edward Lea ("Lea") and Dios Asset Management PTE. LTD. ("Dios Asset Management," and together with Lea, "Plaintiffs"), respectfully request PSLRA awards in the aggregate amount of $15,000 ($7,500 each) to compensate them for the time and effort they have expended on behalf of the Settlement Class. Ex. 1-2. Each Plaintiff, *inter alia*, researched the facts of the case; reviewed the pleadings and briefs filed in the Action, as well as court orders; conferred with Plaintiffs' Counsel about the litigation and the strengths and weaknesses of the case; responded to discovery by, among other things, answering interrogatories and collecting and producing documents; were extremely involved in settlement negotiations (Mr. Lea attended the virtual mediation); and, after extensive discussions with Plaintiffs' Counsel, authorized settlement of the case. Ex. 1 ("Lea Decl.") ¶¶4-6, Ex. 2 ("Dios Asset Management Decl.") ¶¶4-6. But for their

"commitment to pursuing these claims, the successful recovery for the Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at \*6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Wolke Declaration, Lead Counsel respectfully request that the Court award Plaintiffs' Counsel 33⅓% of the Settlement Fund, approve reimbursement of $159,013.14 in litigation expenses, and grant PSLRA awards of $7,500 to each Lead Plaintiff.

## III.   ARGUMENT

### A.   Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at \*2 (S.D.N.Y. Nov. 7, 2007). Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Veeco*, 2007 WL 4115808, at \*2; *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at \*9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite*

*Co.*, 396 U.S. 375, 393-94 (1970)).  All of these elements are present here.  Plaintiffs' Counsel's efforts conferred a substantial benefit—$7.5 million in cash—on an ascertainable class.  And, a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the Settlement, *i.e.*, the Settlement Class.  Accordingly, the Court should award attorneys' fees from the Settlement Fund.  *See Maley*, 186 F.Supp.2d 369.

### B.    The Court Should Award a Reasonable Percentage of the Common Fund

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees."  *Goldberger*, 209 F.3d at 50.  However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources."  *Monzon v. 103W77 Partners, LLC,* 2015 WL 993038, at *2 (S.D.N.Y. 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.").[4]  The percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class."  15 U.S.C. § 78u-4(a)(6).[5]

---

[4] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

[5] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the

Use of the percentage method does not, however, render the lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fee awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *see also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011).

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10.

C.   **The Requested Attorneys' Fees Are Reasonable**

1.   **The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

The 33⅓% fee requested by Lead Counsel is well within the range of percentage fees awarded in the Second Circuit in comparable complex class actions. *See Maley*, 186 F. Supp. 2d at 370 (finding 33⅓% fee request of settlement fund valued at $11.5 million "falls comfortably within the range of fees typically awarded in securities class actions"); *In re Lloyd's Am. Trust Fund Litig.*,

___

percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (collecting cases and stating "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.,* where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."); *In re NYSE Specialists Sec. Litig.*, No. 03-cv-8264, ECF No. 38, slip op. at ¶ 19 (S.D.N.Y. June 10, 2013) (awarding approximately 41% of $18.5 million settlement) (Ex. 11); *Wilson v. LSB Industries, Inc.*, 2019 WL 3542844, at *1 (S.D.N.Y. June 28, 2019) (awarding 33⅓% of $18.45 million settlement fund); *In re China Media Express Holdings, Inc. S'holder Litig.*, 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding 33.33% of $12 million settlement fund); *In re van der Moolen Holding N.V. Sec. Litig.*, No. 03 Civ. 8284, slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding 33⅓% of $8 million settlement fund) (Ex. 12); *Hayes v. Harmony Gold Mining Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33⅓% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *In re Cnova N.V. Sec. Litig.*, No. 1:16-cv-00444-LTS-OTW (S.D.N.Y. Mar. 20, 2018), ECF No. 148 at 5 (awarding 33.3% of $28.5 million settlement fund) (Ex. 13).[6]

Moreover, recognizing the importance of efficient and effective advocacy, Courts have repeatedly awarded similar fees where a settlement was reached during the pendency of a motion to dismiss or shortly thereafter, and where no or very limited discovery had been obtained as a result of the PSLRA discovery stay. *See Maley*, 186 F. Supp. 2d at 370 (awarding 33⅓% of $11.5 million settlement, representing a 4.65 multiplier, where motions to dismiss were pending); *In re Ubiquiti*

---

[6] *See also* Ex. 8 (collecting cases); *Levine* v. *Atricure, Inc.*, No. 1:06-cv-14324-RJH, ECF No. 85, slip op. at ¶6 (S.D.N.Y. May 27, 2011) (awarding 33⅓% and stating "[t]he requested fee 33⅓% of the settlement is within the range normally awarded in cases of this nature") (Ex. 14); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations").

*Networks, Inc. Sec. Litig.*, No. 18-cv-01620 (VM), ECF No. 49 at 6 (S.D.N.Y. March 27, 2020) (awarding 33.3% of $15 million settlement, where settlement was reached prior to the filing of a motion to dismiss) (Ex. 15); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) (awarding one-third of $8.5 million settlement following decision on motion to dismiss, but prior to formal discovery).[7]

Here, Plaintiffs' Counsel, *inter alia*, conducted an extensive investigation into TAL's allegedly wrongful acts; drafted a comprehensive amended complaint based on this investigation; engaged in substantial briefing in opposing TAL's motion to dismiss and in appealing this Court's order dismissing the case; engaged in fact discovery, including exchanging initial disclosures, serving and responding to requests for production of documents and interrogatories, and analyzing thousands of pages of documents, many of which were in Chinese; and engaged in extensive mediation efforts with an experienced neutral. Additionally, "[a]bsent Plaintiffs filing and winning the appeal, this [Court's] dispositive decision would have resulted in zero recovery for the then putative class of allegedly aggrieved investors." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *3 (S.D.N.Y. Oct. 16, 2019). Under such circumstances, Plaintiffs' Counsel should be rewarded for their substantial efforts, as well as their efficient and effective advocacy. *See Zeltser v.*

---

[7] *See also In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, ECF No. 10, slip op. at ¶3 (S.D.N.Y. Mar. 17, 2011) (Ex. 16); (awarding 30% of $18 million, representing a multiplier of 3.17, where settlement was reached while motion to dismiss was pending); *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04 Civ. 1773 (DAB), ECF No. 170, slip op. at ¶16 (S.D.N.Y. July 18, 2007), ECF No. 170 (awarding 27% of $100 million, where settlement was reached while motion to dismiss was pending) (Ex. 17); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) (awarding one-third of $4.9 million settlement fund where settlement was reached prior to filing a motion to dismiss); *In re Idreamsky Technology Limited Sec. Litig.*, 2018 WL 8950640, at *4 (S.D.N.Y. April 6, 2018) (awarding one-third of $4.15 million following decision on motion to dismiss, but prior to formal discovery); *Too v. Rockwell Medical, Inc.*, 2020 WL 1026410, at *3 (E.D.N.Y. Feb. 26, 2020) (awarding 33⅓% of $3.7 million settlement fund prior to formal discovery); *In re TeleTech Litig.*, No. 1:08-cv-00913-LTS, ECF No. 82 (S.D.N.Y. June 11, 2010) (awarding 30% of $11 million settlement reached before motion to dismiss was filed) (Ex. 18).

*Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (awarding a 33% fee, equating to a multiplier of 5.1, where settlement was reached after consolidated amended complaint was filed and noting that Plaintiff's Counsel should not be "penalize[d] . . . for achieving an early settlement, particularly where . . . the settlement amount is substantial."); *Savoie v. Merchs. Banks*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

## 2. The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[8] Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie*, 166 F.3d at 460. Thus, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010).

---

[8] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

Here, Plaintiffs' Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 2,836.90 hours to the prosecution of this Action, resulting in a lodestar of $1,921,243.00. ¶91.[9]  Based on a 33⅓% fee (equal to $2,500,000), Plaintiffs' Counsel's lodestar of yields a multiplier of 1.3.  This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation.  *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding a 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 in light of an early settlement).[10]

---

[9] Plaintiffs' Counsel's rates range from $600 to $995 for partners, and $500 to $750 for associates (¶90), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Hi-Crush*, 2014 WL 7323417, at *14 (approving rates "ranging from $425 to $825 per hour" *in 2014*); *see also* Ex. 10 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

[10] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of "between four and five"); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("multipliers of between three and four times…have been routinely awarded in this Circuit."); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable."); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier).

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar. Moreover, as discussed below, each factor established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

### D.   Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

### 1.   Time and Labor Expended Support the Requested Fee

The time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement supports the requested fee. As set forth in greater detail in the Wolke Declaration, Plaintiffs' Counsel, among other things:

- researched, drafted and filed the initial complaint in the Action (*Lea v. TAL Education Group, et al.*, Case No. 1:18-cv-05480-RWS (S.D.N.Y.)), which asserted violations of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder (¶18);

- drafted a motion for consolidation and appointment of lead plaintiffs (¶19);

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) TAL'S filings with the U.S. Securities and Exchange Commission ("SEC") and the Chinese State Administration for Industry and Commerce, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning TAL, (iii) TAL's investor call transcripts, and (iv) other publicly available material related to TAL; (b) retaining and working with private investigators who conducted an investigation in China that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; and (c) consulting with accounting, damages and loss causation experts (¶20);

- researched, drafted and served the 62-page Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws, asserting claims against TAL and the Individual Defendants under Section 10(b) of the Exchange Act, and under Section 20(a) against Individual Defendants (¶21);

- researched and drafted the opposition to TAL's motion to dismiss, as well as Plaintiffs' related motion to strike (¶23);

- researched and drafted a reply brief in support of Plaintiffs' motion to strike (¶24);

- researched, drafted, and argued the successful appeal from this Court's dismissal of the Action in the Second Circuit (¶¶26-29);

- engaged in significant discovery efforts, including: (i) exchanging initial disclosures; (ii) propounding requests for written and documentary discovery; (iii) preparing detailed responses to TAL's discovery requests and producing documents; (iv) reviewing and analyzing thousands of pages of documents produced by TAL (many of which were produced in Chinese); and (v) meeting and conferring with Defendant's Counsel to negotiate the scope of document production (¶¶31-38);

- negotiated a stipulation governing the treatment of confidential information and documents that was endorsed by the Court, as well as a stipulation regarding the production of hard copy documents and electronically stored information that was approved by the Court (¶35);

- researched and drafted a motion for class certification, which included a detailed expert report on market efficiency, and several supporting declarations (¶40);

- engaged in a mediation process overseen by a highly experienced third-party mediator, Jed Melnick, Esq., of JAMS, which involved an exchange of written submissions concerning the facts of the case, liability and damages, a full-day formal mediation session, extensive consultation with Plaintiffs' experts on damages and loss causation, and weeks of follow-up negotiations (¶¶42-45);

- negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendant's Counsel (¶46);

- worked with Plaintiffs' damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly (¶¶78-84);

- drafted the preliminary approval motion and supporting papers (¶46);

- oversaw the implementation of the notice process (¶¶70-76); and

- drafted the motion for final approval (¶92).

It is also important to recognize that the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proof of Claim forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a

distribution motion. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."). Accordingly, this factor supports the requested fee.

### 2.     The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 467 (quoting *Goldberger*, 209 F.3d at 55). The many severe risks that Plaintiffs' Counsel faced in prosecuting this suit more than justify the requested 33⅓% fee. *See, e.g.*, ¶¶49-66.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *Flag Telecom*, 2010 WL 4537550, at

\*27.[11]  This case was no exception.  From the outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [more than three] years." *In re Giant Interactive Group, Inc. Securities Litigation,* 279 F.R.D. 151, 164 (S.D.N.Y. Nov. 2, 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiffs' Counsel] have not been compensated for any time or expenses since this case began more than [three] years ago." *Flag Telecom*, 2010 WL 4537550, at \*27.  Plaintiffs' Counsel's commitment was substantial (*i.e.*, $1,921,243.00 in lodestar and $159,013.14 in out-of-pocket hard costs), and had they not obtained a recovery, it could have all been lost. *See Gross v. GFI Group, Inc.*, 784 Fed. App'x. 27, 28 (2d Cir. Sept. 13 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action where GPM served as one of Lead Plaintiff's Counsel); *see also* ¶91 (lodestar), 111 (expenses).

The risks in this case were particularly acute.  Plaintiffs faced substantial obstacles to proving key elements of liability, such as falsity, materiality and scienter.  ¶¶56-59.  This Court's decision granting TAL's motion to dismiss with prejudice demonstrates as much.  *Lea v. TAL Educ. Grp.*, 2019 WL 4688691 at \*4 (S.D.N.Y. Sept. 25, 2019) ("Plaintiffs fail to plead either a material

---

[11] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at \*3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

misrepresentation or omission or scienter."). Even after Plaintiffs prevailed on appeal, TAL continued to press those same defenses, and there still existed major obstacles to ***proving*** liability and damages. *See Christine Asia Co.*, 2019 WL 5257534, at *12 ("The Court agreed with Defendants at the motion to dismiss phase, and even after the appeal, Plaintiffs' ability to prove otherwise at trial was not a foregone conclusion.").

**Establishing Liability:** This Action is based on two alleged sets of transactions: (i) TAL's sale of its tutoring business Guangzhou One-on-One ("GZ 1-1") to Changing Education, Inc. ("Changing Edu") and the subsequent repurchase, which purportedly allowed TAL to improperly recognize $50 million in pre-tax income; and (ii) TAL's minority investment in, and subsequent acquisition of a majority interest in, educational start-up Beijing Shunshun Bida Information Consulting Co. Ltd. ("Shunshun"), a company that provides counseling services for students seeking to attend college abroad, that purportedly allowed to TAL to improperly recognize a $25.2 million accounting profit. *See TAL Educ. Grp.*, 837 Fed. Appx. at 22. At issue in both alleged frauds were questions of control. With respect to the GZ 1-1 transactions, Plaintiffs alleged that TAL never actually sold GZ 1-1 to Changing Edu and continued to control GZ 1-1 at all times, and the purported sale and purchase were sham transactions used to record a false accounting gain. With respect to the Shunshun transactions, Plaintiffs alleged that TAL acquired control over Shunshun at the time of its initial investment and that TAL improperly used the valuation implied by its second investment to revalue its initial investment in violation of the applicable accounting rules.

At the motion to dismiss stage, TAL sought to "counter any inference of fraud by pointing to legitimate, nonfraudulent business reasons that would account for the alleged conduct." *TAL Educ. Grp.*, 837 Fed. Appx. at 24. For instance, TAL claimed, *inter alia*, that: (i) as of September 1, 2015, when the GZ 1-1 transfer purportedly became effective, all of its employees had either terminated

their employment with TAL or signed new employment agreements with Changing Edu; (ii) TAL and Shunshun were collaborating with each other as *distinct* entities with a stake in each other's success; and (iii) Shunshun and its angel investor, IDG Capital, appointed Shunshun's CEO Yang Zhang and announced his selection, directly contradicting the Complaint's allegation that TAL "installed" Zhang in his CEO position.  ECF No. 29 at 14, 16.  TAL also asserted that: (i) Plaintiffs did not, and could not, allege motive and opportunity—such as suspicious stock sales or unusual bonuses; and (ii) TAL has not restated any of its quarterly or annual financial filings submitted to the SEC, and its independent auditor has not withdrawn or amended any of its audit opinions.  ECF No. 29 at 20-21.

Although this Court agreed with TAL and concluded that each of plaintiffs' allegations of control by TAL had "alternative explanations so obvious that they render plaintiff's inferences unreasonable," and rejected Plaintiffs' allegations of scienter (*TAL Educ. Grp.*, 2019 WL 4688691, at *3, 7), the Second Circuit, viewing Plaintiffs' allegations in their totality, "respectfully reach[ed] a contrary conclusion."  *TAL Educ. Grp.*, 837 Fed. Appx. at 24, 27.  However, it remained an open question how the Court would have viewed the parties' competing evidence and explanations at summary judgment and how the trier of fact would have viewed the competing evidence and explanations at trial.  *See In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the...litigation to assess the risks involved."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005) ("there was no assurance that the Litigation would survive Defendants' challenges to the pleadings, motion for summary judgment, trial and appeal.").

Moreover, the risks inherent in the case were significantly magnified by the fact that TAL is a Cayman Islands company that operates exclusively in Beijing, China.  All of the witnesses and

documentary evidence would be located in China, and all of the documents would be written in Chinese. As a result, the costs of litigating this case would be substantially higher and considerably more complicated and time intensive. Documents would need to be obtained from, or reviewed in, China and translated; depositions—if they could be taken at all—would require a main interpreter and check interpreters; and third-party discovery would have been virtually impossible to obtain. ¶¶51-55. Plaintiffs knew from the outset they would have to surmount these significant obstacles to obtain the evidence needed to support their claims, and those challenges have been heightened even further by the pandemic and the China's crackdown on Hong Kong. In short, proving liability was in no way guaranteed; rather, the only certainty in this litigation was that it would be expensive, time-consuming and complicated. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("the Company's location in China would have posed a barrier that would have increased the difficulty and expense of discovery, and might have made it impossible to collect some of the evidence or take depositions necessary to prove Plaintiffs' claims.").[12]

**Loss Causation and Damages:** Even if Plaintiffs established liability, they faced significant risks in proving loss causation and damages. *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("It is well-established that plaintiffs alleging claims under Section 10(b) of the '34 Act must prove loss causation."). For example, TAL would have argued that Plaintiffs faced a significant disaggregation problem because the alleged GZ 1-1 and Shunshun frauds are

---

[12] *See also In re Advanced Battery Technologies, Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. Mar. 24, 2014) ("Defendants and key witnesses are located in China, which would add tremendous complication and cost to pursue discovery."); *Giant Interactive*, 279 F.R.D. at 164 ("counsel faced the additional challenges that many documents needed translation, that evidence, witnesses and depositions were overseas, and that discovery motions were heavily contested").

unrelated, and yet they were both revealed in a single disclosure—the Muddy Waters Report. Plaintiffs' allegation of stock price inflation is premised on both the GZ 1-1 and Shunshun transactions being fraudulent.  ¶60.  If Plaintiffs ultimately were able to prove that only one set of transactions were fraudulent, but not the other, they may have faced difficulties in demonstrating how much of the stock price drop was caused by the portion of the Muddy Waters Report relating to GZ 1-1 as opposed to the portion relating to Shunshun.  *See FLAG Telecom*, 574 F.3d at 36 ("to establish loss causation, *Dura* requires plaintiffs to disaggregate those losses caused by 'changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events,' from disclosures of the truth behind the alleged misstatements").

In addition, TAL argued before the Second Circuit, and likely would have continued to argue, that all of the relevant facts concerning the GZ 1-1 and Shunshun transactions were publicly disclosed through various regulatory filings prior to the issuance of the Muddy Waters Report.  ¶60. While the Second Circuit rejected these arguments at the pleadings stage, once the parties were able to present a more developed factual record and competing expert testimony, Plaintiffs may have faced complicated issues relating to loss causation, damages and a potential truth-on-the-market defense that could have served to greatly reduce or potentially eliminate recoverable damages. Indeed, in securities class actions, "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion . . . .'"  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459; *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (in securities class actions, the "complexities of calculating damages increase geometrically").  "There is the undeniable risk that a jury could be swayed by experts for the Defendant[], who could minimize the amount of Plaintiffs' losses."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *In re Warner Commcn's Sec.*

*Litig.*, 618 F. Supp. 738, 744-45 (S.D.N.Y. 1985).  In short, establishing class-wide damages in this case was far from a "slam dunk."

Finally, even if Plaintiffs overcame all of those risks and prevailed at trial for the full amount of damages, they would still face the risk of an adverse decision on post-trial motions or reversal on appeal,[13] and there would have been additional risks related to the collectability of any monetary judgment.  TAL has few, if any, assets in the U.S., its limited D&O insurance was wasting, and Chinese courts generally do not enforce U.S. court judgments.  *See* ¶¶63-66; *see also Giant Interactive*, 279 F.R.D. at 161 ("Finally, even assuming a plaintiffs' verdict, obtaining a recovery would likely have been uncommonly difficult and time-consuming, as counsel have explained that this litigation could face unique delays because defendant Giant has no assets outside of China, and any judgment obtained in the United States would have been of uncertain enforceability overseas.").[14]

In sum, Plaintiffs faced substantial risks.  While Plaintiffs and their counsel believe this case has merit and that they could have successfully navigated each risk presented, the risks remained.  If any of them materialized, the Settlement Class might have recovered far less than the proposed Settlement, or nothing at all.  In the context of these myriad risks, the $7.5 million Settlement Amount is an excellent result for the Settlement Class, and Plaintiffs' Counsel's ability to obtain that

---

[13] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and directing entry or judgment for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following jury verdict in plaintiffs' favor), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (reversing verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

[14] *See also* Winstron & Strawn LLP, Terence Wong, Nassim H. Hooshmandnia & Ya'nan Zhao, *The Current Status of Enforcing U.S. Judgments in China*, Lexology (July 30, 2019) (noting Chinese courts have only twice recognized and enforced a U.S. civil court judgment) (*available at* https://www.lexology.com/library/detail.aspx?g=ef57b307-d4f0-40c3-81ce-a9d6bf95cbc1).

result given the many obstacles inherent in the Action supports the reasonableness of the fee request. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3.    The Magnitude and Complexity of the Action Support the Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Such was the case here.

As noted above and in the Wolke Declaration, this case raised a number of complex questions concerning liability and damages that required great skill and extensive efforts to litigate. *See* ¶¶95-102. The complexities were especially acute given the case's international dimension, involving foreign parties and witnesses, and foreign-language documents, in a dispute that turned in large part on accounting judgments and valuation methodologies, as well as Plaintiffs' ability to collect evidence in China. Thus, this was an incredibly complex matter—even by the standards of securities class actions.

The magnitude of this Action was similarly unquestionable. This was hard-fought, expensive, multi-year litigation, with tens of millions of dollars of damages at stake, and it required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the

requested fee.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May

9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and

multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Representation Supports the Requested Fee

Lead Counsel submits that the quality of representation the Settlement Class received is best

evidenced by the result obtained.  *See, e.g.*, *Global Crossing*, 225 F.R.D. at 467 ("The quality of

Securities Lead Counsel's representation is evidenced by the recovery obtained for the Securities

Class"); *Veeco*, 2007 WL 4115808, at *7 ("the quality of the representation of Plaintiffs' Counsel is

best evidenced by the result.").  The $7.5 million Settlement—one of the largest ever against a Chinese

company (*see* Ex. 9 (collecting cases))—is an outstanding result for the Settlement Class in light of the

risks of litigation.[15]  This result alone speaks volumes about the quality of the representation.

Additionally, the quality of Plaintiffs' Counsel's efforts and commitment to providing the

Settlement Class with the best possible representation, together with their substantial experience in

securities class actions, provided leverage necessary to negotiate the Settlement.  *See* Exs. 4-6

(Plaintiffs' Counsel's firm resumes).  Recently, Plaintiffs' Counsel GPM and RLF achieved a $250

million settlement against the China-based company, Alibaba, which remains the largest securities

class action settlement against a Chinese company.  *Christine Asia Co.*, 2019 WL 5257534.  Thus,

Plaintiffs' Counsel's experience and reputation contributed to the successful resolution of the Action.

The quality of the opposition faced by Plaintiffs' Counsel should also be taken into account.

---

[15] The Settlement also equates to approximately 5.3% of **maximum** recoverable damages—*i.e.*, Plaintiffs' absolute best case scenario—and is significantly greater than the 1.7% median recovery for securities class actions in 2020.  *See* Ex. 7 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) at p. 20 (Fig. 16)).  Of course, had TAL prevailed on any of its liability or damages arguments, recoverable damages would have been substantially reduced, if not altogether eliminated.  *See Facebook,* 343 F. Supp. 3d at 414 ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.").

*See, e.g.*, *Veeco*, 2007 WL 4115808, at \*7 (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at \*3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).  Here, TAL was vigorously represented by Skadden, Arps, Slate, Meagher & Flom LLP, one of the country's most prestigious and experienced law firms.  ¶104.  Notwithstanding this capable opposition, Plaintiffs' Counsel's thorough investigation, ability to present a strong case, successful appeal, and demonstrated willingness to vigorously prosecute the Action enabled them to achieve the favorable Settlement.  The quality of that representation supports the requested fee.

### 5.       The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery.  "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at \*3.  As discussed in detail in Section III.C.1, *supra*, the requested 33⅓% fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases.  Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.       Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373.  This is because private actions like this one further the objective of the federal securities laws to protect investors.  "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions

brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. Indeed, "[a]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9.

Here, Plaintiffs' Counsel invested substantial amounts of time and money developing, and vigorously pursuing, serious allegations of wrongdoing against a public company on behalf of a class of TAL shareholders. There was no governmental investigation of any sort and, but for the hard work of Plaintiffs' Counsel, the Settlement Class would have recovered nothing. *See Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (fee request supported by fact that "there were no governmental investigations or prosecutions related to the alleged fraud upon which Class Counsel could rest their theory of the case. Rather, they investigated the facts and developed their theory of liability from scratch, involving significant time and expense."). Thus, public policy considerations favor Plaintiffs' Counsel's fee request. *See China Sunergy*, 2011 WL 1899715, at *6 ("The Court finds that public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.").

### E.   Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel also request reimbursement of $159,013.14 in expenses incurred by Plaintiffs' Counsel while prosecuting the Action. In support of this request, Plaintiffs' Counsel submitted

separate declarations attesting to the accuracy of these expenses, which are properly recovered by counsel. *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."). A significant portion of the expenses were incurred for professional services rendered by Plaintiffs' experts, consultants, and investigators, and the remaining expenses are attributable to the costs of legal and factual research, photocopying, and other expenses incurred in the course of the litigation. ¶¶114-117. These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, they should be reimbursed. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). Additionally, no objections to the expense request have been received, and the amount requested is below the $230,000 limit disclosed in the Notice. *See* Ex. 3-A (Notice), at ¶5; Wolke Decl. ¶119. Thus, Lead Counsel respectfully request reimbursement for these expenses.

**F.    Plaintiffs Should be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)**

In connection with their request for reimbursement of Litigation Expenses, Counsel also respectfully request PSLRA awards of $7,500 for each Lead Plaintiff for time spent prosecuting the Action. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any

representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, each Plaintiff took an active role in the litigation by, among other things: (a) regularly communicating with their attorneys regarding the posture and progress of the case, as well as strategy; (b) reviewing the pleadings and briefs filed in the Action, as well as court orders; (c) responding to discovery by, *inter alia*, answering interrogatories and collecting and producing documents; (d) were extremely involved in settlement negotiations (Mr. Lea attended the virtual mediation); and (e) after extensive discussions with Plaintiffs' Counsel, authorizing settlement of the case. Exs. 1-2. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Marsh & McLennan*, 2009 WL 5178546, at *21.

Consequently, Lead Counsel respectfully request that the Court grant Plaintiffs' requests for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21 (approving $215,000 total award to two lead plaintiffs); *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *Qudian*, 2021 WL 2328437, at *2 (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class"); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit).[16]

## IV.   **CONCLUSION**

For the foregoing reasons, Lead Counsel respectfully request that the Court grant the requested relief.

---

[16] *See also Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM) (FM), ECF No. 1099 at 3 (S.D.N.Y. Mar. 28, 2013) (awarding seven plaintiffs reimbursement amounts ranging from $25,000 to $50,000) (Ex. 19); *In re Signet Jewelers Limited Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff).

Dated: October 26, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Kara M. Wolke*
Kara M. Wolke (*pro hac vice*)
Leanne H. Solish (*pro hac vice*)
Garth A. Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  kwolke@glancylaw.com
            lsolish@glancylaw.com
            gspencer@glancylaw.com

Gregory B. Linkh
230 Park Avenue, Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

*Lead Counsel for Lead Plaintiffs*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On October 26, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 26, 2021.

*s/ Kara M. Wolke*
Kara M. Wolke