UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

EDWARD LEA et al.,

                              Plaintiffs,

                 -against-

TAL EDUCATION GROUP et al.,

                              Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/2021

18-CV-5480 (KHP)

OPINION APPROVING

SETTLEMENT AND

AWARD OF FEES

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

This is a pending class action seeking relief under the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of all purchasers of TAL Education Group's securities ("TAL" or "Defendant") American Depository Shares ("ADSs") from June 1, 2016 through June 13, 2018. (*See* Compl., ECF No. 1.) On July 2, 2021, the undersigned granted the parties' motion for preliminary approval of the proposed settlement.[1] (*See* Order, ECF No. 77.)  On October 26, 2021, the parties filed this motion for final approval of the class action settlement and plan of allocation. (*See* Mot. for Final Settlement Approval ("Final Approval"), (ECF No. 80.)  Plaintiffs' counsel simultaneously moved for an award of attorneys' fees and reimbursement of costs, as well as for approval of an award of $7,500 to each of the Lead Plaintiffs. (ECF No. 81.)  For the reasons stated below, the Motions are both GRANTED.  Concurrently with issuance of this Opinion, the Court is issuing a Judgment, a Plan of Allocation Order, and a Fee and Expense Order.

**FACTUAL BACKGROUND**

---

[1] Due to an administrative error, although the parties consented to my jurisdiction at the time the preliminary approval order was issued (July 2, 2021, *See* Order, ECF No. 77.), a formal consent order was not entered until November 4, 2021. (*See* ECF No. 85.)

Lead Plaintiff Edward Lea ("Lea") brought this class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased American Depository Shares ("ADSs")[2] of Tal Education Group ("TAL") between June 1, 2016 through June 13, 2018 (the "Class Period"), against Tal Education Group, as well as Defendants Zhang Bangxin ("Bangxin"), Yungeng Bai ("Bai"), and Luo Rong ("Rong") (collectively, "Individual Defendants") for alleged violations of the Securities Exchange Act of 1934 (the "Exchange Act"). (*See* Am. Compl. at 1, ECF No 23.)

 TAL provides educational services and offers comprehensive tutoring services to students covering core academic subjects such as mathematics, English, Chinese, physics, and chemistry.  (*Id*. ¶ 29.)  TAL Education Group is incorporated in the Cayman Islands and its principal executive offices are in Beijing, China.  TAL's American Depository Shares ("ADS") trade on the New York Stock Exchange ("NYSE") under the symbol "TAL."  (*Id*. ¶ 19.)

The Individual Defendants were senior executive officers of TAL during the Class Period.  (ECF No. 23; Am. Compl. ¶¶ 19-23.)  Bangxin was the Chairman of its Board of Directors and Chief Executive Officer of TAL at all relevant times.  (*Id*. ¶ 20.)  Bai was the President of TAL since October 2016 and served as Senior Vice President of TAL from April 2011 to September 2016.  (*Id*. ¶ 21.)  Rong was the Chief Financial Officer of TAL since November of 2014 and was in charge of TAL's strategic investments from February 2015 through December 2016. (*Id*. ¶ 22.)  Collectively, because of their positions with the Company, the Individual Defendants possessed the power and authority to control the contents of TAL's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  (*Id*. ¶ 23.)

---

[2] "American Depository Shares (ADSs) are U.S. securities that correspond to a foreign security. The foreign security is technically owned by the depositary bank." American Depository Shares, 2 Litigation of International Disputes in U.S. Courts § 8:38.

One of TAL's core businesses is it Guangzhou one-on-one tutoring business, GZ 1-1. (ECF No. 23., ¶ 24.) In August of 2015, TAL purportedly transferred its GZ 1-1 business to a third party, Changing Edu, in exchange for $50 million in Changing Edu redeemable preferred shares. (*Id*. ¶ 36.) Changing Edu specializes in matching K-12 students with teachers who make home visits to conduct one-on-one training. (*Id*. ¶ 29.) Defendants confirmed during the Q2 2016 earnings call on October 22, 2015 that TAL transferred GZ 1-1 for equity in Changing Edu and recorded a gain of $50 million from the transfer. (*Id*. ¶ 37.) In November 2016, TAL purportedly re-acquired GZ 1-1 from Changing Edu. As consideration, Changing Edu cancelled the 50 million in redeemable preferred shares. (*Id*. ¶38.) Defendants gave no reasons why TAL agreed to buy back GZ 1-1 from Changing Edu. (*Id*. ¶ 40.) Plaintiffs contended that the 'fake' transaction greatly improved TAL's financials for the relevant fiscal periods and constituted fraud. TAL recorded a pre-tax $50 million "gain from disposal of a component" from the supposed transfer of GZ 1-1 to Changing Edu, resulting in an increase in net income of $37.5 million for Q2 of 2016. (*Id*. ¶ 42.)

Plaintiffs asserted that Defendants failed to disclose to investors: (1) that the Company overstated its net income; (2) that the Company's net income was deteriorating; and (3) that, as a result of the foregoing, Defendant's statements about TAL's business, operations, and prospects, were materially false and/or misleading. (*Id.*)

Plaintiffs also asserted that Defendants used the false transfer of GZ 1-1 to fraudulently recognize $37.5 million in net income, laying the groundwork for another purported accounting fraud involving a company called Shunshun. (ECF No. 23. ¶ 93.) In May 2015, Shunshun was a failed startup that TAL allegedly controlled. TAL made an an $18 million investment in Shunshun, installed a new CEO and transferred one of TAL's subsidiaries to Shunshun. (*Id*. ¶ 94.) On paper, TAL owned a minority position, but, according to Plaintiffs, TAL controlled Shunshun as a subsidiary. (*Id*.) In June of 2016, TAL purchased an additional interest in Shunshun at a cost in exess of what it paid per share in 2015, implying that

Shunshun was worth more in 2016 than in 2015, and ultimately recognized a $25.2 million profit from a purported increase in the value of Shunshun shares. (*Id*. ¶ 95.)  Plaintiffs allege that this violated applicable accounting rules.  (*Id*.)

On June 13, 2018, analyst firm Muddy Waters published a report on TAL which revealed that TAL's claim that it sold GZ 1-1 in August 2015 was false and that TAL improperly recognized net income of $37.5 million from the disposition that never happened, that TAL controlled Shunshun from the date of the June 2015 purchase and improperly recognized $25.2 million from the revaluation of its interest in Shunshun following the June 2016 purchase.  (Id. at ¶ 193; see also ECF No. 23, Exh. 2.) On this news, the Company's share price fell from $4.54 per share to $, or approximately 9.95%, injuring investors. (*Id*. ¶194)

## PROCEDURAL BACKGROUND

On June 18, 2018, Plaintiff filed the initial complaint.  ("Compl." ECF No. 1)  On August 17, 2018, Plaintiffs filed a timely motion for consolidation of related actions, appointment of Edward Lea and Dios Asset Management as Lead Plaintiffs, and approval of a lead counsel.  (ECF Nos. 5-7.)  On September 27, 2018, The Honorable Robert W. Sweet granted all of Plaintiff's requests and consolidated case 1:18-CV-6440 into case 1:18-CV-5480.  (ECF No. 19.)

On January 3, 2019, Plaintiffs filed the amended class action complaint.  (ECF No. 23.)  In lieu of answering the amended complaint, on February 26, 2019, Defendants filed a motion to dismiss.  (ECF Nos. 27-29.)  On September 25, 2019, the Honorable Loretta A. Preska granted Defendants' motion to dismiss.  (ECF No. 44.)  Plaintiffs filed a timely appeal and, on November 25, 2020, the Court of Appeals for the Second Circuit reversed the district court's judgment and remanded the case for further proceedings.  (ECF No. 47.)

On January 22, 2021, Defendants filed an answer to the amended complaint. (ECF No. 60.) Thereafter on April 26, 2021, the parties submitted a joint status letter to the Court reporting that the parties had engaged in private mediation and reached an agreement in principle to settle all claims. (ECF No. 68.)  On July 2, 2021, the undersigned granted preliminary approval of the proposed class action settlement.  (ECF No. 77.)  Following preliminary approval, class notice was mailed and otherwise advertised in accordance with the preliminary approval order.  There were no objections to the Settlement and only three requests for exclusion. (ECF No. 88 p. 3.)

This Court conducted a final fairness hearing on November 30, 2021.  At the fairness hearing, the Court heard oral argument on the overall fairness of the proposed settlement agreement from both a procedural and substantive standpoint, as well as argument about the application for fees, costs and an award to the Lead Plaintiffs.

## THE SETTLEMENT AGREEMENT

The proposed Settlement Agreement defines the Settlement Class as:

> all persons and entities who or which purchased or otherwise acquired TAL ADS between June 1, 2016 and June 13, 2018, inclusive (the "Settlement Class Period") and were damaged thereby. Excluded from the Settlement Class are: (1) persons who suffered no compensable losses; and (2) (a) Defendant and the Individual Defendants; (b) the legal representatives, heirs, successors, assigns, and members of the Immediate Families of the Individual Defendants; (c) the parents, subsidiaries, assigns, successors, predecessors, affiliated variable interest entities, and all other affiliates of TAL; (d) any persons who served as an Officer and/or director of TAL during the Settlement Class Period and their Immediate Family members; (e) any entity in which any of the foregoing (a)-(d) excluded persons have or had a majority ownership interest during the Settlement Class Period; (f) any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; and (g) TAL's liability insurance carriers.

(ECF No. 73 at p.7, n. 2.)  Members of the Settlement Class will be entitled to a share of the Net Settlement Amount, that is $7,500,000 cash payment by TAL.  Each Settlement Class member's share will be determined by the overall net loss on all of their transactions with TAL during the Class Period, as

compared to the total value of ADSs represented by valid Proof of Claim forms sent in by all Class Members.

In exchange for their share of the Net Settlement Fund, members of the Settlement Class release:

all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Lead Plaintiffs or any other member of the Settlement Class:(i)asserted in any complaint in this Action; or (ii)could have asserted or could assert in the future in any forum that arise out of, are based upon or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase, acquisition, holding, sale or disposition of TAL ADS during the Settlement Class Period. Released Plaintiffs' Claims do not Case include:(i) any claims relating to the enforcement of the Settlement; and (ii)any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

(ECF No. 74-1 at p. 11.)

In addition to the Settlement Class payments, the Settlement also contemplates an award of Plaintiffs' counsel fees in the amount of 33 1/3% of the Settlement Fund and no more than $230,000 in expenses, as well as an amount for each Lead Plaintiff, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(4). (*See* Pl.'s Mem. of Law. in Supp. of Atty's Fees, ECF No. 83.)

## LEGAL STANDARD FOR APPROVAL OF CLASS SETTLEMENT

In the Second Circuit, "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks omitted)).  "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Id*.  Rule 23(e) provides that "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Court approval of a class action

settlement must be premised on a hearing and subsequent finding that the settlement is "fair, reasonable, and adequate" and not the product of collusion or some other malfeasance. *See* F.R.C.P. 23(e)(3); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).

Before approving a class action settlement, the district court must conclude that the proposed class meets the requirements for class certification set forth in Rule 23(a) and the relevant subsection of Rule 23(b). *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012). When confronted with a request for settlement-only class certification, the Court does not need to inquire whether the case, if tried, would ". . . present intractable management problems, for the proposal is that there be no trial." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "At the same time, however . . . other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention." *Id*. (quoting *Amchem*, 521 U.S. at 620) (internal quotation marks omitted). "Thus, in the context of settlement, Rules 23(a) and (b) continue to serve the purpose of 'focus[ing] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.*

The determination of whether the class should be certified and the terms of the proposed settlement are "fair, reasonable, and adequate" rests in the discretion of the district court. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 273 (2d Cir. 2006); *see* Fed. R. Civ. P. 23(e)(2). In exercising its discretion, the district court must engage in careful balancing but "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As such, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [the Second Circuit] in reviewing that approval have the right or the duty

to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute."

*Grinnell*, 495 F.2d at 456.   "Defendants in class action suits are entitled to settle claims pending against

them on a class-wide basis even if a court believes that those claims may be meritless, provided that the

class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e)." *In re Am.*

*Int'l Grp., Inc. Sec. Litig.,* 689 F.3d 243-44 (2d Cir. 2012).

Courts tasked with approving a settlement then consider its procedural and substantive fairness,

determining whether the terms of the settlement and the negotiation process leading up to it are fair.

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), *aff'd sub nom.*

*In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570,

575 (S.D.N.Y. 2008) (internal quotation marks omitted)).   When a settlement is the product of "arms-

length negotiations between experienced, capable counsel after meaningful discovery," it is afforded a

"presumption of fairness, adequacy, and reasonableness." *Wal-Mart,* 396 F.3d at 116. Additionally,

when considering the benefits achieved by a settlement, courts must keep in mind that "there is a range

of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and

fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation

to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

## DISCUSSION

### I.     Class Certification

The Court finds that the prerequisites for a class action under Rules 23(a) and (b)(3) are satisfied

for purposes of settlement.

#### a.   Rule 23(a)

Rule 23(a) imposes four threshold requirements for certification of a class action: (1) numerosity

("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are

questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

With regard to the first requirement, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "The movant need not provide a precise quantification of their class, since a court may make common sense assumptions to support a finding of numerosity . . . [n]evertheless, the movant must show some evidence of or reasonably estimate the number of class members." *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). Here, the Settlement Class is comprised of purchasers of TAL ADSs. (ECF No. 73 at p. 24.) During the Class Period, TAL ADSs were actively traded on the NYSE with millions of ADSs traded in that period. Thus, while the precise number of Settlement Class Members cannot be identified, it is likely to be in the thousands. Indeed, over 67,000 class notices were mailed and as of the date of the fairness hearing, over 2,000 claim forms had been returned.[3] Accordingly, numerosity is satisfied. *See In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (quoting *Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397, 1401 (D. Conn. 1988) ("In securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period").

Additionally, the commonality and typicality requirements are also met here. The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 n.5 (2011); *Marisol A.*

---

[3] The final number of claim forms had not been determined as of the date of the Fairness Hearing.

*v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  A class may only be certified if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality demands that the class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).  "'[F]actual differences in the claims of the class do not preclude a finding of commonality.'" *Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 73 (S.D.N.Y. 2006) (quoting 5 *Moore's Federal Practice* § 23.23).  Put simply, commonality may be found were the plaintiffs' alleged injuries "derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)  Similarly, with the typicality requirement, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of [those] of the class." Fed. R. Civ. P. 23(a)(3).  The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.,* 126 F.3d at 376. "[M]inor variations in the fact patterns underlying [the] individual claims" do not preclude a finding of typicality. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, the common questions of law and fact in this case all relate to whether Defendants engaged in a common scheme to defraud TAL's investors.  TAL's alleged misrepresentations or omissions of material facts concerning TAL's business and financial status in turn caused members of the Settlement Class to suffer a compensable loss.  (*See* ECF No. 73 at pp. 24-25.)  This is sufficient to satisfy the commonality and typicality requirements, particularly in the settlement context. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409-10 (S.D.N.Y. 2015); *see Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233 (E.D.N.Y. 2014).

In order to meet the final requirement, adequate representation of the class's interests, Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class

members; and (2) class counsel is qualified, experienced and generally able to conduct the litigation. *Marisol A.*, 126 F.3d at 378.  To satisfy the first prong, courts in this Circuit have required plaintiffs to show that "no fundamental conflicts exist" between the class' representatives and its members.  *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) (citing *In re Literary Works*, 654 F.3d at 249).  Here, Plaintiffs interests are directly aligned with the interests of the Settlement Class as they all involved purchased TAL's ADSs during the Class Period and allegedly suffered harm as a result of Defendants' alleged misdeeds. (ECF No. 73 at pp. 26-27.)  Moreover, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified and experienced counsel.  (*Id*.)  Plaintiffs counsel has substantial experience in securities class actions and has recently successfully litigated a $250 million settlement against Chinese-based company, Alibaba, which remains the largest securities class action settlement against a Chinese company to date.  (ECF No. 83, p. 29; Exs 4-6 "Plaintiffs' Counsel's Firm Resumes.")  Thus, Plaintiffs demonstrated that Lead counsel has extensive experience and expertise litigating securities class action cases in similar situations.  (*Id*.)

   b.  Rule 23(b)(3)

   In addition to satisfying the Rule 23(a) requirements, certification must be appropriate under Rule 23(b).  *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, 2021 WL 234550, at *20 (E.D.N.Y. Jan. 19, 2021) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).  "Certification under Rule 23(b)(3) requires both that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, [predominance] and that (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority].  *B & R Supermarket, Inc.,* 2021 WL 234550, at *20 (citing Fed. R. Civ. P. 23(b)(3)) (internal quotation marks omitted).

"The predominance inquiry tests whether proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Wang v. Tesla, Inc.*, 2021 WL 3160795, at *10 (E.D.N.Y. July 26, 2021) (citing *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Wang,* 2021 WL 3160795, at *10 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)) (internal quotation marks omitted).  Plaintiffs need not prove, however, that the legal or factual issues that predominate will be answered in their favor. *See, e.g., Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).  With regard to the second prong, to satisfy the superiority requirement, the moving party must show that "the class action presents economies of 'time, effort and expense, and promote[s] uniformity of decision.'" *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 130 (2d Cir. 2013).  The superiority requirement is designed to avoid "repetitious litigation and possibility of inconsistent adjudications." *B & R Supermarket, Inc.,* 2021 WL 234550, at *33 (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *64 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015)).

Here, as already discussed, the Plaintiffs and Settlement Class members suffered the same harm, albeit to different degrees, because of the same alleged malfeasance by Defendants. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws").  Further, there is no evidence that putative class members desire to bring separate individual actions, as there were only three requests for exclusion and no objections, and the Parties are unaware of any individual securities fraud litigation involving the same issues.  (ECF No. 73 at p. 28.)  Accordingly, it is desirable to concentrate the claims in this Court as TAL's common stock

is, and was, traded on the NYSE.  (*Id.*)  Lastly, the request for class certification is only for purposes of settlement, and the Court need not inquire as to whether the case, if tried, would present management problems. *See In re AXA Equitable Life Ins. Co. COI Litig.*, 2020 WL 4694172, at *7 (S.D.N.Y. Aug. 13, 2020) (citing *Public Emps.' Ret. Sys. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011) (finding superiority where "there is no overwhelming interest by class members to proceed individually"); *see also Amchem Prods., Inc.,* 521 U.S. at 617 (The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.) (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (1997)). Thus, the Rule 23(b)(3) factors are met.

**II.      The Settlement Is Fair In Light of Rule 23(e) and the *Grinnell* Factors**

Pursuant to Fed. R. Civ, P. 23(e), courts routinely approve settlements of a class action such as the instant one.  "Settlement approval is within the Court's discretion, which 'should be exercised in light of the general judicial policy favoring settlement.'" *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (citation omitted); *see also Wal-Mart Stores*, 396 F.3d at 116 (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted).  As provided above, the district court's approval of a settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  This entails a review of both procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

"Fairness is determined upon review of both the terms of the stipulation and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D. N, Y. 2005).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Rule 23(e)(2), as amended on December 1, 2018, instructs the Court to determine whether the

Settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Prior to the 2018 amendments, courts in the Second Circuit have long

considered whether a settlement was fair, reasonable, and adequate" under the nine factors set out in

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.

2000).  Importantly, "not every factor must weigh in favor of [the] settlement, rather the court should

consider the totality of these factors in light of the particular circumstances." *In re Glob. Crossing Sec.*

*& ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

The Advisory Committee Notes to the 2018 amendments to Rule 23 explain the goal of the

amendments was "not to displace" any of the *Grinnell* factors, "but rather to focus the court and the

lawyers on the core concerns of procedure and substance that should guide the decision whether to

approve" the settlement.  *See* 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2).  Accordingly, the

Court's assessment of the settlement under Rule 23(e) is guided and informed by the *Grinnell* factors. *See In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019)

a. Procedural Fairness

"With respect to procedural fairness, . . . a District Court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *McReynolds*, 588 F.3d at 804 (citing *D'Amato*, 236 F.3d at 85) (alterations in original) (internal quotation marks omitted).  Accordingly, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016) (citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012) (internal quotation marks omitted).

Here, as discussed *supra*, counsel for both sides are experienced in class action litigation, conducted extensive investigation of the facts, and engaged in briefing for Defendants' motion to dismiss. (*See* ECF No. 82 at p. 12.)  Moreover, the Settlement is the product of arm's length negotiations between the parties' counsels, before a neutral and experienced mediator affiliated with JAMS. *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) (Courts have also recognized a presumption of fairness when a settlement is reached with the assistance of a mediator.)  Finally, as detailed in the motion papers and at the fairness hearing, Plaintiffs' counsel spent extensive time investigating the facts to prepare the complaint and amended complaint, including by hiring an investigator in China to interview TAL employees, and received written discovery from Defendants.  Both sides also were informed about the strengths and weaknesses of the claims and defenses by the briefing and decisions on the motion to dismiss and its appeal. These facts support the

conclusion that the settlement process was procedurally fair and that the "plaintiffs' counsel . . . possessed the experience and ability, and have engaged in the discovery[ ] necessary to effective representation of the class' interests." *In re Parking Heaters,* 2019 WL 8137325, at *3 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  Thus, the Court concludes that the settlement is procedurally fair.

b. <u>Substantive Fairness</u>

Rule 23(e)(2)(C) instructs the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  And, as noted above, the *Grinnell* factors assist the Court in assessing the substantive fairness of the settlement.

The first and third *Grinnell* factors – which evaluate the complexity, expense, and likely duration of the litigation, and the stage of the proceedings and the amount of discovery completed – favor approval of the settlement. "Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain to litigate." *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (internal citations and quotation marks omitted).  This case has been pending for over three years, against foreign defendants, and most of the discovery, documentary evidence, and depositions would need Chinese translation. (ECF No. 82. at pp. 14-15.)  The probability of Plaintiffs being able to examine third parties in this case, as well as take depositions in the People's Republic of China, or Hong Kong, would be extremely difficult and costly, if not outright unfeasible, especially in light of the ongoing COVID-19 pandemic.  (*Id*.)  Additionally, following Plaintiffs' successful appellate defeat of Defendants' Motion to Dismiss, disposition of this case would likely require subsequent motions for class certification and summary judgment and a multi-week trial, all before any class members might hope to receive any recovery.  (*Id.*)  In other words, the

settlement brings to a close litigation that could have lasted several more years and costs hundreds of thousands of dollars in attorneys' fees and expenses and brings immediate relief to the class.  Although the parties have not engaged in extensive discovery, there was sufficient discovery to appropriately inform them about the facts and risks of continued litigation to enter into settlement discussions. Further, it is clear based on the parties' respective positions in the case (i.e., Defendants denying all liability and vigorously challenging the claims and the Plaintiffs' pursuit of an appeal), that the negotiations were sufficiently adversarial. *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) ("the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.")

*Grinnell* factors four and five – the risks of establishing liability and damages -- also favor approval of the settlement.  In considering these factors, the Court need not adjudicate the disputed issues or decide unsettled questions; rather, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). Regarding the risks in establishing damages, ". . . proof of damages in a securities fraud case is always difficult and invariably requires expert testimony." *Mikhlin,* 2021 WL 1259559, at *6 (internal quotation marks and citation omitted).  Here, Plaintiffs acknowledge that the claims asserted against TAL presented a number of substantial risks to establishing both liability and damages, as well as very real collection issues.  (ECF No. 82. at p. 15.)  While Plaintiffs prevailed before the Second Circuit at the pleading stage, the Second Circuit remanded this case, and Plaintiffs still would need to prove their case through documents and deposition testimony.  Notably, notwithstanding engagement of a Chinese investigator, Plaintiffs still have been unable to locate any witnesses who could provide direct evidence of the alleged accounting fraud.  (ECF No. 82. At p. 17.)  Such evidence would be important in proving

scienter, a critical element of the fraud claim. *See, e.g.*, *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 327 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."). Equally, for damages, Plaintiff would have to disaggregate the losses caused by changed economic circumstances, changed investor expectations, new industry-specific facts and other conditions from disclosures of the truth behind the alleged misstatements by Defendants. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29, 36 (2d Cir. 2009). Furthermore, to resolve all disputed issues regarding damages and liability, the parties would have to rely on expert testimony, which creates further litigation risk.

Four of the *Grinnell* factors concern the reaction of the class to the settlement, the risks in maintaining the class action through the trial, and the range of reasonableness of the settlement fund in light of the best possible recovery in light of all of the risks of litigation. *In re Payment Card*, 330 F.R.D. at 47. ("The range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation, are two *Grinnell* factors that are often combined for the purposes of analysis.") After careful review, all of these factors favor the proposed settlement. "Courts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be denied." *Mikhlin,* 2021 WL 1259559, at *6 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (internal citation omitted). Here, the parties stipulated to class certification solely for the purpose of settlement. If the class action were litigated, however, Defendants likely would have opposed certification of a litigation class and may have mounted winning arguments. The risks attendant to certifying a class and defending any decertification motion supports approval of the settlement. *See Garland v. Cohen & Krassner*, 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011) (citing *In re Med. X–Ray*, 1998 WL 661515 (possibility that defendants would challenge

maintenance of a class in the absence of settlement was considered a risk to the class and potential recovery)).

"In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." *In re Payment Card*, 330 F.R.D. at 48. The range of reasonableness for a settlement is a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Mikhlin,* 2021 WL 1259559, at *8 (citing *Wal-Mart*, 396 F.3d at 119) (internal quotation marks omitted). Here, the parties agreed to the Settlement Amount of $7.5 million after negotiations under the direction of a neutral and experienced mediator. Additionally, the proposed settlement is one of the top ten securities class action recoveries against a China-based company. (ECF No. 82 at p. 20.) The Settlement Amount represents a recovery of 5.3% of the Settlement's Class's maximum estimated damages—an amount that may have been adjusted downward after further expert discovery and motion practice. (*Id*. at p. 21.) By way of example, because Plaintiffs alleged two different misstatements and one corrective disclosure, if Plaintiffs did not succeed in proving one of the two misstatements, they may have had difficulty disaggregating losses caused by the one remaining misstatement. In light of the substantial litigation risks to Plaintiffs, as discussed *supra*, as well as the risk that their full theory of damages might not be successful, the Settlement Amount represents a fair deal for the settlement class. *See Mikhlin,* 2021 WL 1259559, at *9 ("Courts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness") (citing *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *4 (S.D.N.Y. Dec. 16, 2019) (finding a settlement valued at 10.9 percent to 21.3 percent of the total possible recovery to be reasonable)).

Lastly, the final *Grinnell* factor - the ability of the defendant to withstand a greater judgment supports approval of the settlement. This factor stands for the proposition that if a defendant could not

withstand a greater judgment than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate. *See In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd sub nom., In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997). According to information provided at the fairness hearing, TAL's share price has suffered under new regulatory scrutiny of for-profit education companies in China. Its future success as a business is not guaranteed. In any event, even if TAL could withstand a greater judgment, this fact alone does not preclude a finding that the settlement is fair. *See In re Payment Card*, 330 F.R.D. at 47 (citing *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012)).

   c.   The Allocation Formula for Distributing the Settlement

In addition to the above, the methods of distributing relief to the class and processing class-member claims leans in favor of approving the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re Payment Card*, 330 F.R.D. at 40 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate. . . . [a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card*, 330 F.R.D. at 40 (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (internal citations and quotation marks omitted); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) ("When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis"). Here, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. (ECF No. 82 at p.

21.)   The Claims Administrator – A.B. Data, Ltd. ("A.B. Data") – will process the claims under Lead Counsel's guidance, allow Claimants an opportunity to cure claim deficiencies or request the Court to review their claim denial, and, lastly, mail Authorized Claimants their pro rata share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  (ECF No. 88.)  Furthermore, under the Agreement, the class members are treated equitably relative to each other.  Class Members will receive a pro rata share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants.  (*Id*.)  This methodology is appropriate and consistent with many other securities class action settlements' plans of allocation.

    d.  <u>Attorneys' Fees, Costs and Incentive Awards</u>

Rule 23(e)(C)(iii) also requires consideration of the terms of any proposed award of attorney's fees.  Plaintiffs seek an attorneys' fee award of 33 1/3% of the Settlement Amount and $159,013.14 in costs, as well as $7,500 for each Lead Plaintiff (i.e. $15,000 combined, $7,500 for each Lead Plaintiff). (ECF No. 83 at p. 9.)  The Court has reviewed the documents submitted by class counsel in support of their request for attorney's fees and costs, including attorney declarations, billing records, and receipts/invoices for the claimed costs.  For the reasons discussed below, the Court finds that an award of award of 33 1/3% of the Settlement Amount, $159,013.14 in costs, and an award of $7,500 for each Lead Plaintiff are reasonable and therefore approves the requests awards.

    i.  <u>Attorneys' Fees</u>

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees . . . " *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

"The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Parking Heaters,* 2019 WL 8137325, at *7 (citing *Wal-Mart*, 396 F.3d at 121) (internal quotation marks omitted). "A court applying either method should consider the following *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *In re Parking Heaters,* 2019 WL 8137325, at *7 (citing *Goldberger*, 209 F.3d at 50).

In this case, Plaintiffs' counsel attests that a total of 2,836.90 hours were spent working on this litigation. (ECF No. 83 at p. 18.) As the Court stated *supra*, class counsel in this case is experienced in complex securities class action cases. (*Id*.) The time and labor expended by class counsel is reasonable considering that this case has been pending for over three years and required vigorous advocacy in response to Defendants' motion to dismiss and extensive and complex investigation of facts in China and requiring translation of many documents to English. Moreover, the claimed time is supported by Plaintiffs' counsels' respective declarations and corresponding billing records. (*Id.*) The Court has taken into account the quality of class counsel's representation in determining that the uncontested amount of fees in the settlement, and this factor favors awarding the uncontested amount of fees in the settlement.

The risk of the litigation is often cited as the first, and most important, *Goldberger* factor. *MetLife*, 689 F. Supp. 2d at 361; *see also Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost factor' to be considered in determining whether to award an enhancement.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)). The Second Circuit has recognized that risk is inherently associated with a case undertaken on a contingent

fee basis.  *See Grinnell*, 495 F.2d at 470 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success").  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *MetLife*, 689 F. Supp. 2d at 361 (internal quotation marks and citation omitted).  Class counsel undertook this litigation on a contingent basis and have received no payment for their work during the roughly three years that the case has remained pending, which counsels in favor of approving the requested fee.

Additionally, had the case proceeded in litigation, the difficulties class counsel would have had in establishing the class's claims to relief given the complexities in this case in particular, which the Court has discussed above, also presented serious risks.  These risks warrant approval of the fees request. *See In re AOL Time Warner ERISA Litig.*, 2006 WL 2789862, at *8 (S.D.N.Y. Sept. 27, 2006) ("[E]ven the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement.").

The quality of the representation Class Counsel has provided is reflected in their excellent representation of the class, including the successful appeal and negotiation of a settlement at an appropriate time given the risks of collecting any judgment from a Chinese entity and limited insurance. This also favors approval of the fee request.

The percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit.  *See, e.g., Levine v. Atricure, Inc.,* ECF No. 85, slip op. at ¶6 (S.D.N.Y. May 27, 2011) (awarding 33⅓% and stating "[t]he requested fee 33⅓% of the settlement is within the range normally awarded in cases of this nature") (*See* Ex. 14); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second

Circuit."); *Anwar v. Fairfield Greenwich Ltd*., 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012)(33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *Puddu v. 6D Glob. Techs., Inc.,* 2021 WL 1910656, at *6 (S.D.N.Y. May 12, 2021) (Awarding attorney's fees in the amount of one-third (33.3.%) of the Settlement Fund is within the range for rates in this district and thus reasonable).

The percentage reflects a multiplier of 1.3 of Class Counsel's fees using the lodestar method.  This is reasonable given the risk Class Counsel took in taking this case on contingency.  With regard to the lodestar, Class Counsel spent, in the aggregate, 2,836.90 hours in the prosecution of this case, producing a total loadstar amount of $1,921,243.00 when multiplied by counsels' billing rates. (ECF No. 83 at p. 18.)  Plaintiffs' Counsel's rates range from $600 to $995 for partners, and $500 to $750 for associates (ECF No. 83 at p. 18, n.9.), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *14 (S.D.N.Y. 2014) (approving rates "ranging from $425 to $825 per hour" in 2014); *see also* Ex. 10 (chart of rates charged by peer plaintiff and defense counsel in complex litigation). Additionally, Plaintiff counsel's provided contemporaneous billing records, which the Court has reviewed and finds reflect a reasonable expenditure of time given the complexity of this matter.

Finally, "[p]ublic policy favors the award of reasonable attorneys' fees in class action settlements." *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012).  Courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis. *See In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515-16 (S.D.N.Y. 2009).  Moreover, "the Supreme Court has . . . emphasized that private actions provide a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d

358, 373–74 (S.D.N.Y. 2002) (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (alteration in original) (internal quotation marks omitted).  Here, Defendants are comprised of a foreign company and its directors who listed ADSs on an American exchange and stand accused of violating, *inter alia*, the Exchange Act through fraud and other criminal acts.  (*See generally* 2d. Am. Compl., ECF No. 23.)

Therefore, in light of the foregoing, Plaintiffs' counsels' motion for attorneys' fees in the amount of 33 1/3% of the Settlement Fund is granted.

### ii.  Costs

Plaintiffs' counsel requests an award of $159,013.14 in costs.  (ECF No. 83 at p. 9.)  "Courts routinely note that counsel is entitled to reimbursement . . . for reasonable litigation expenses." *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987)).  In this case, Plaintiffs' counsel have submitted documentary evidence supporting their request for an award of costs. (See ECF Nos. 83, 84.)  Having reviewed the costs, the Court finds that they were reasonably expended and should be reimbused.  Accordingly, the request for an award of costs in the amount of $159,013.14 is granted.

### iii.  Incentive Awards

Plaintiffs also request incentive awards of $7,500 for the Lead Plaintiffs Edward Lea and Dios Asset Management PTE. LTD.  (ECF No. 83 at p. 11.)  Collectively, this amounts to $15,000.  Such awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (internal quotation marks and citation omitted); *see also Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001) ("An incentive award is meant to compensate the named

plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.").

Each of the Lead Plaintiffs submitted a declaration detailing their efforts in this action. (*See* Lea Decl; *See* Dios Decl. at ECF No. 84.)  Both Plaintiffs estimate that they expended 50 hours on the prosecution of this litigation, during which they regularly reviewed filings made with the Court, including drafts. (*Id*. ¶ 13.)  Additionally, they both understood their duty to serve the interests of the Class and was prepared to act for the class. (*Id.* ¶ 3,7.)  The incentive award requested by both Plaintiffs is modest relative to others awarded in our Circuit.  *See Kindle*, 308 F. Supp. 3d at 718 (E.D.N.Y. 2018) (awarding named plaintiff $10,000 and collecting cases granting incentive awards in this amount).  For these reasons, the application for an incentive award for Plaintiff Lea and Plaintiff Dios Asset Management in the amount of $7,500 each is granted.

## CONCLUSION

For all the above reasons, final approval of the settlement is appropriate.  The motion for approval (ECF No. 80.) is granted.  The motion for attorneys' fees and costs (ECF No. 81.) is also granted.  Concurrently with issuance of this Opinion, the Court is issuing a Judgment, a Plan of Allocation Order, and a Fee and Expense Order.

**SO ORDERED.**

DATED:   New York, New York
           November 30, 2021

_____
KATHARINE H. PARKER
United States Magistrate Judge